```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND
```

_____
                                      )
CHRISTOPHER WALKER,                   )
                                      )
          Plaintiff,                  )
                                      )
     v.                               )    C.A. No. 23-57 WES
                                      )
IHI POWER SERVICES CORP., and         )
JOHN AND JANE DOES 1-10,              )
                                      )
          Defendants and              )
          Third-Party Plaintiff,      )
                                      )
     v.                               )
                                      )
MASS. ELECTRIC CONSTRUCTION CO.,      )
                                      )
          Third-Party Defendant.      )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Senior District Judge.

Before the Court is Third-Party Defendant Mass. Electric Construction Co.'s Motion for Entry of a Protective Order Regarding IHI Power Services Corp.'s Rule 30(b)(6) Deposition Notice ("Motion for Protective Order"). ECF No. 40. The Court determines that no hearing is necessary. For the reasons below, the Motion for Protective Order is granted in part and denied in part.

I.   BACKGROUND

This discovery dispute arises in the context of a personal injury lawsuit in which IHI Power Services Corp. ("IHI") is a Defendant. Compl. 1, ECF No. 1. The Plaintiff is Christopher

Walker, who at all times relevant to the Complaint was an employee of Mass. Electric Construction Co. ("MEC"). Id. ¶ 14. According to the Complaint, Walker was electrocuted on April 21, 2022, while performing maintenance on a generator at the Manchester Street Power Station ("MSPS"), which was managed, operated, and maintained by IHI. Id. ¶¶ 7, 16, 26. Walker was performing this work as part of his employment with MEC, which had contracted with IHI "to provide electrical shop support at the MSPS." Id. ¶¶ 12, 15.

Central to Walker's claims against IHI is an allegation that its employees failed to properly ground the generator before Walker began his maintenance work. Id. ¶¶ 21, 26. Although IHI admits to this allegation, it contends that Walker's injuries would not have occurred if (1) Walker and Zach Howarth, a fellow MEC employee who was there at the time, had followed the policies and procedures of both the MSPS and MEC, and (2) MEC had properly trained Howarth. Answer Def. IHI Pl.'s Compl. ¶ 21, ECF No. 5; 3d-Party Compl. ¶¶ 10-25, ECF No. 16. In other words, IHI contends "the negligence of MEC is an intervening superseding cause." Mem. L. Supp. Def./3d- Party IHI's Obj. Mot. Protective Order ("IHI Mem.") 2, ECF No. 42-1. This contention lies at the heart of IHI's Third-Party Complaint seeking contractual indemnity from MEC. See 3d-Party Compl. ¶¶ 6-28.

2

During discovery between the parties, IHI has deposed nine current and former MEC employees, including Walker and Howarth, and MEC has produced over 15,000 pages of documents in response to 132 requests for production. Mem. L. Supp. Mot. Protective Order ("MEC Mem.") 6, ECF No. 40-1. The parties have reached an impasse, however, with respect to the scope of IHI's proposed deposition of MEC under Federal Rule of Civil Procedure 30(b)(6). Id. at 6-10. IHI's initial deposition notice sought testimony on forty-two topics. Id. at 7. Although the parties have since narrowed the issues, twenty-six topics remain in dispute. Id. at 9-10

MEC argues that nineteen of the disputed topics (3-10, 17-18, 27-28, 31-34, 38-40) are not described with sufficient particularity, are vague and overbroad, and seek testimony that is not relevant or proportional to the needs of the case. Id. at 11-16. These topics relate to MEC policies, procedures, or training that would have guided the work of its employees at the MSPS. Id. MEC raises particularity and vagueness concerns with respect to eleven of the nineteen topics, and relevance and proportionality concerns with respect to all of them. Id. On the latter set of concerns, MEC contends that none of the topics are relevant because IHI has (1) testified that MSPS policies and procedures — not MEC's — governed what happened at the site and has admitted that (2) its employees incorrectly grounded the generator and (3) it was

responsible for ensuring that all work at the site was performed in a safe manner. Id. at 14-15. What MEC thus appears to argue is that its policies, procedures, and training are beside the point.

Next, MEC objects to three topics in IHI's revised notice that seek testimony regarding MEC's contentions as to the cause of the incident (Topic 11) and the allegations in the Complaint and Third-Party Complaint (Topics 25-26). Id. at 16-17. MEC agrees to designate a witness to testify about other topics identified in IHI's revised notice, such as the incident, the facts surrounding it, and MEC's investigation of it (Topics 2, 16, 29). Id. at 16. MEC argues, however, that a Rule 30(b)(6) deposition is not the proper vehicle for seeking an opposing party's contentions as to the cause of an incident out of which a given claim arose. Id. Furthermore, MEC contends that its organizational representative should not be expected to testify about the allegations in either the Complaint or the Third-Party Complaint, as those topics encompass legal theories and choices — on the part of Walker and IHI — that fall outside of MEC's knowledge. Id. at 16-17.

MEC further argues that Topics 21 and 22, which seek testimony regarding MEC's communications with third parties about its contract with IHI as well as any internal documents about the same, must be narrowed to exclude information that is protected from

4

disclosure. Id. at 17-20. The information includes communications between MEC and its insurer, Old Republic Insurance Company, which it contends are protected under the common-interest and joint-defense doctrines. Id. at 18.

The final disputed topics concern two internal communications within MEC about the incident: a document titled "Lessons Learned & Continuous Improvement" (Topic 35), and an email from former Executive Vice President Michael Rinehart (Topic 36). Id. at 20-22. MEC argues that it should be permitted to designate the prior witness testimony of Rinehart; Vice President John Hammond, who authored the "Lessons Learned" document; and Safety Coordinator Kaitlyn Cunningham, who typed the document. Id.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26(c)(1) permits courts upon a showing of "good cause" to issue orders that protect against "annoyance, embarrassment, oppression, or undue burden or expense" in the discovery process. Fed. R. Civ. P. 26(c)(1). Courts have "broad discretion . . . to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). "The 'good cause' standard . . . is a flexible one that requires an individualized balancing of the many interests that may be present in a particular case." Gill v. Gulfstream Park Racing Ass'n, Inc., 399 F.3d 391,

5

402 (1st Cir. 2005) (brackets omitted) (quoting United States v. Microsoft Corp., 165 F.3d 952, 959-60 (D.C. Cir. 1999)). But "[t]he burden of demonstrating good cause rests on the proponent of the protective order." ClearOne Commc'ns., Inc. v. Chiang, 276 F.R.D. 402, 403-04 (D. Mass. 2011) (citing Pub. Citizen v. Liggett Grp., Inc., 858 F.2d 775, 789 (1st Cir. 1988)).

### III. DISCUSSION

#### A. Topics 3-10, 17-18, 27-28, 31-34, 38-40

The Court denies MEC's Motion as to this first set of topics. MEC's basic argument is that its policies, procedures, and training of its employees are not relevant or proportional to the needs of the case. As support, MEC cites IHI's admissions that its policies and procedures — not MEC's — guided the work at the MSPS, that its employees incorrectly grounded the generator, and that it was responsible for ensuring all work at the MSPS was done in a safe manner. MEC Mem. 14-16. MEC also raises particularity and vagueness concerns with respect to eleven of the nineteen topics in this subset. Id. at 13-14.

Despite these admissions, it remains the case that IHI's key claim — indeed, the basis of its Third-Party Complaint — is that MEC's negligence is a superseding cause of Walker's injuries. In support of this claim, IHI alleges that Walker and Howarth failed to comply with both MSPS and MEC policies, and furthermore, that

6

Howarth was not properly trained by MEC. 3d-Party Compl. ¶¶ 7-25. To be sure, as this Court noted in a related case, IHI's allegations on these points are vague, if not conclusory. Old Republic Ins. v. IHI Power Servs. Corp., 2024 WL 3952637, at *11 (D.R.I. Aug. 27, 2024). But so long as IHI's claims hinge on MEC's training of Walker and Howarth and their compliance with MEC's policies and procedures, those matters are relevant.

Accordingly, the Court permits IHI to seek testimony from MEC on these matters, which are encompassed in Topics 3-10, 17-18, 27-28, 31-34, and 38-40; although two caveats are in order. The first caveat addresses MEC's particularity and vagueness concerns. MEC highlights the potential breadth of the term "relating to," which appears in Topics 3-6, 8, and 17, among others. MEC Mem. 13. The revised deposition notice defines the almost identical term "related to" as "referring to, describing, offering evidence of, or constituting." Id. Ex. 7, at 7, ECF No. 40-7. Because only one topic uses "related to" and many more use "relating to," the Court assumes the terms are interchangeable and finds they are not overbroad as defined. The second caveat is that just because the Court has determined, for instance, that IHI may seek testimony on MEC's District Safety Manual (Topic 31), that does not mean each sentence in that 250-page document is fair game, or even relevant, for that matter. If, during the deposition, IHI asks questions

about this or any other topic that MEC deems irrelevant, then its designee will have counsel there to object. See S.E.C. v. Merkin, 283 F.R.D. 689, 696 (S.D. Fla. 2012).

In short, the Court denies MEC's Motion for Protective Order as to Topics 3-10, 17-18, 27-28, 31-34, and 38-40.

**B. Topics 11, 25-26**

The Court grants MEC's Motion as to this second set of topics. MEC has agreed to designate a witness to testify about the incident and the surrounding facts (Topics 2 and 16), as well as MEC's investigation of the incident (Topic 29). MEC Mem. 16. But it objects to IHI seeking testimony about MEC's contentions as to the cause of the incident (Topic 11) or the allegations in the Complaint and Third-Party Complaint (Topics 25 and 26). Id. Unless Topics 11, 25, and 26 are purely duplicative of Topics 2, 16, and 29, IHI appears to be seeking MEC's opinions about the claims and defenses of the parties in this case. But "depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." JPMorgan Chase Bank v. Liberty Mut. Ins., 209 F.R.D. 361, 362 (S.D.N.Y. 2002); see also Cook v. Lynn & Williams, Inc., 344 F.R.D. 149, 154 (D. Mass. 2023) ("A rule 30(b)(6) deposition is an overbroad, inefficient, and unreasonable means of discovering an

8

opponent's factual and legal basis for its claims.") (citation omitted). Moreover, Topics 25 and 26 seek testimony from MEC regarding the contentions or legal theories of <u>other</u> parties (Walker and IHI), which MEC has no reasonable basis for knowing.

Because seeking such information is improper in the context of a Rule 30(b)(6) deposition, the Court grants MEC's Motion for Protective Order as to Topics 11, 25, and 26.

### C. Topics 21-22

As to this set of topics, the Court grants MEC's Motion. IHI seeks testimony about communications between MEC and third parties concerning its contract and/or the project with IHI (Topic 21), as well as all internal documents, electronically stored information ("ESI"), notes, and the like concerning the same (Topic 22). MEC asks the Court to limit Topic 21 to exclude its communications about these topics with Old Republic, its insurer, because such communications implicate the common-interest and joint-defense doctrines. MEC Mem. 17-18. For its part, IHI disclaims any interest in these communications. IHI Mem. 9. But the Court nevertheless grants MEC's Motion for Protective Order as to Topic 21, which shall be limited to exclude communications with Old Republic concerning the contract and/or the project.

Additionally, the Court grants MEC's Motion for Protective Order as to Topic 22, which shall be limited to nonprivileged

internal documents, communications, ESI, notes, memoranda, diaries, superintendent reports, drawings, receipts, and vouchers concerning the contract and/or the project. The Court notes that a protective order is not the only — or even preferred — safeguard against the disclosure of privileged information during a Rule 30(b)(6) deposition; that is what objections from counsel are for. But MEC has put the issue before the Court, and so the motion is granted.

### D. Topics 35-36

As to the remaining topics in dispute, the Court denies MEC's motion. IHI seeks testimony on two MEC documents that address the incident and were shared internally with MEC employees: the "Lessons Learned" document (Topic 35); and the Rinehart email (Topic 36). MEC Mem. 20. MEC argues that both documents have been the subject of extensive prior deposition testimony of MEC employees who were involved in the documents' creation, including Rinehart, Hammond, and Cunningham. Id. at 20-22. MEC therefore seeks to designate the prior witness testimony of Rinehart, Hammond, and Cunningham in lieu of producing an organizational representative to testify about these documents. Id. at 20.

IHI contends the documents contain admissions that Walker and Howarth violated MEC policies on the incident date. IHI Mem. 6-7. The Lessons Learned document, for example, highlights MEC

policy or process violations that occurred during the incident. Id. at 10.  In response, MEC argues that because MSPS policies and procedures — not MEC's — governed what happened at the site on the incident date, the objective of the document was to highlight, for educational purposes, what would have amounted to an MEC policy or process violation had the incident occurred at an MEC-controlled site.  MEC Mem. 21.  MEC further quotes deposition testimony from Rinehart to this effect.  Id.

Although both documents have been the subject of considerable testimony, the Court agrees with IHI that further testimony from an organizational representative about these documents would not be superfluous.  That is especially because the "admissions" in these documents — whether hypothetical or actual — seem highly relevant to IHI's claim that Walker's injuries would not have occurred if he and Howarth had followed MEC's policies.  It might be determined at a later stage of this litigation that MEC's policies are wholly beside the point.  But for now they are central to IHI's claims.  Accordingly, the Court denies MEC's Motion for Protective Order as to Topics 35 and 36.

**IV.  CONCLUSION**

For the reasons above, the Court DENIES the Motion for Entry of a Protective Order Regarding IHI Power Services Corp.'s Rule 30(b)(6) Deposition Notice, ECF No. 40, as to Topics 3-10, 17-18,

11

27-28, 31-34, 35-36, and 38-40; and GRANTS that Motion as to Topics 11, 21-22, and 25-26.


IT IS SO ORDERED.

/s/ WESmith
_____
William E. Smith
Senior District Judge
Date:  March 28, 2025